```
                 UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF WEST VIRGINIA

                          AT CHARLESTON
```

JORDAN LAWRENCE RAUCH,

      Plaintiff,

v.                                    Civil Action No. 2:13-0468

WEST VIRGINIA DIVISION OF CORRECTIONS and
JAMES RUBENSTEIN, Commissioner,
West Virginia Division of Corrections, and
DAVID BALLARD, Warden, Mount Olive Correctional Complex, and
BRIAN WELCH, C.O. II, Mount Olive Correctional Complex, and
JUSTIN COTTRELL, C.O. II, Mount Olive Correctional Complex, and
RITA ALBURY, Inmate Movement Coordinator,
Mount Olive Correctional Complex, and
CHERYL CHANDLER, Executive Assistant to the Warden,
Mount Olive Correctional Complex, and
SHERRILL LYNN SNYDER, Mental Health Director,
Mount Olive Correctional Complex, and
REGINA STEPHENSON, Director of Classification,
Mount Olive Correctional Complex, and
JUSTIN COOK, C.O II, Mount Olive Correctional Complex, and
C.O. BENNITT, C.O. II, Mount Olive Correctional Complex,

      Defendants.


## MEMORANDUM OPINION AND ORDER

Pending are separate motions to dismiss filed by defendants (1) the West Virginia Division of Corrections ("WVDOC"), (2) Correctional Officer ("CO") Bennitt, CO Justin Cook, CO Justin Cottrell, and CO Brian Welch (collectively the "correctional officer defendants"), (3) Rita Albury, Cheryl Chandler, Sherrill Lynn Snyder, and Regina Stephenson

(collectively "designation defendants"), and (4) Commissioner of the West Virginia Division of Corrections James Rubenstein and Mount Olive Correctional Complex ("Mount Olive") Warden David Ballard, each of which were filed on February 6, 2014.

I.

The following allegations are taken from the first amended complaint inasmuch as this case is at the motion to dismiss stage.

Plaintiff Jordan Lawrence Rauch is in the custody of the WVDOC. He is incarcerated at Mount Olive. In approximately May 2009, Mr. Rauch claimed that his safety was in danger from fellow inmates. He sought protective housing and associated classifications to avoid physical harm. These requests were insufficiently addressed to provide Mr. Rauch protection.

On November 7, 2010, an inmate poisoned and attempted to kill Mr. Rauch. On November 7, 2011, and again on February 6, 2013, Mr. Rauch was stabbed on the recreation yard by two different inmates. The inmates who stabbed Mr. Rauch were believed to have carried the weapons from their cell to the recreation yard. In keeping with WVDOC policy, both inmates were allegedly strip searched prior to entering the yard. The

2

search conducted prior to the November 7, 2011, attack was performed by defendants CO Welch, CO Cottrell, and CO Cook.  The search conducted prior to the February 6, 2013, attack was performed by CO Bennitt.

During both stabbings, the correctional officer defendants are alleged to have failed to intervene in a timely manner to prevent further injuries to Mr. Rauch.  As a result of these attacks, and the correctional officer defendants' delayed response, Mr. Rauch suffered permanent and severe physical and psychological injuries.

Mr. Rauch unsuccessfully sought additional protection from inmates through administrative procedures on numerous occasions.  These administrative procedures included the Special Management Review Committee at Mount Olive, which was comprised of the designation defendants.  Defendants Commissioner Rubenstein and Warden Ballard also knew of Mr. Rauch's continued attempts to seek protection and failed to adequately respond.

On January 10, 2013, Mr. Rauch instituted this action.  His first amended complaint, filed January 24, 2014, which the court is obliged to treat as true, alleges four counts pursuant to 42 U.S.C. § 1983.  Count One alleges that all of the defendants deprived Mr. Rauch of his Eighth Amendment rights by

failing to take reasonable steps to protect him from physical harm by other inmates, despite their knowledge that Mr. Rauch's safety was at risk.  Count One also alleges that the policies of the WVDOC demonstrated a callous disregard for Mr. Rauch's right to be incarcerated in a reasonably safe environment.

Count Two asserts that the correctional officer defendants deprived Mr. Rauch of his Eighth Amendment rights by failing to intervene in a reasonable time to stop the stabbings despite fair warning to do so.  In failing to respond to the attacks in an adequate and timely manner, Mr. Rauch alleges these defendants were following policies established by the WVDOC.

Count Three asserts that Mr. Rauch was denied his Fourteenth Amendment rights to due process and equal protection based upon the inadequate responses of the designation defendants and Commissioner Rubenstein and Warden Ballard to his requests for protection from other inmates.  This, too, is alleged to have resulted from policies established by the WVDOC.

Count Four alleges that the WVDOC, Commissioner Rubenstein, and Warden Ballard breached their duties of care to properly supervise and train the correctional officers at Mount Olive, resulting in inadequately supervised and trained

personnel who failed to properly protect Mr. Rauch's constitutional guarantees. The court construes these allegations as giving rise to Fourteenth Amendment claims for failure to train and supervise. The defendants named in Count Four are alleged to have, again, acted pursuant to the policies established by the WVDOC.[1]

II.

A.  Governing Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007). Rule 12(b)(6) correspondingly permits a defendant to challenge a

---

[1] Certain language found in the first amended complaint suggests that Mr. Rauch may also seek relief other than under the federal Constitution. (See, e.g., First Am. Compl. at 1 ("The claims asserted herein are brought pursuant to 42 U.S.C. § 1983 for the Defendants' violations of the Constitutions, statutes and common law of the State of West Virginia and the United States of America.")). Some of the defendants have asserted that unspecified references to federal and state law sources are insufficiently pled. (See, e.g., Desig. Defs.' Memo. in Supp. at 4).

The court need not address these challenges or speculate upon the bases for these unspecified claims. In his response briefing, Mr. Rauch clarifies that "The First Amended Complaint makes it clear that all of the Plaintiff's claims are based on 42 U.S.C. § 1983." (Resp. Br. at 4).

complaint when it "fail[s] to state a claim upon which relief can be granted . . . ." Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), overruled on other grounds, Twombly, 550 U.S. at 563). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570); see also Monroe v. Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" Erickson, 127 S. Ct. at 2200 (quoting Twombly, 127 S. Ct. at 1965); see also South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004) (quoting Franks v. Ross, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

**B.  Law and Analysis**

Several of the grounds alleged in the various motions to dismiss are meritorious.  First, the WVDOC moves to dismiss, <u>inter alia</u>, on the ground that it does not qualify as a "person" under section 1983.  Inasmuch as controlling precedent supports the position, it is ORDERED that the WVDOC's motion be, and it hereby is, granted.  <u>See</u> <u>Will v. Michigan Dep't of State Police</u>, 491 U.S. 58, 71 (1989) ("[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Second, Commissioner Rubenstein and Warden Ballard move to dismiss the Fourteenth Amendment claims arising out of their alleged failures to train and supervise the designation defendants and the correctional officer defendants.  They assert that Mr. Rauch has inadequately pled the claim inasmuch as he has not alleged they "were responsible for training and supervision . . . ."  (Memo. in Supp. at 13).  The first amended complaint alleges the following respecting Commissioner Rubenstein and Warden Ballard:

> 37. Defendants WVDOC, Commissioner Rubenstein, and Warden Ballard owed the Plaintiff a duty to use due care in the supervision and training of correctional officers at MOCC, in order to assure that the Plaintiff's legal rights were not violated in the manner described herein.

7

> 38. These Defendants breached this duty, and the resulting deprivation of the clearly-established constitutional and other legal rights of the Plaintiff was directly and/or proximately caused by the implementation and existence of customs, policies and acts of Defendants WVDOC, Commissioner Rubenstein, and Warden Ballard.
>
> 39. Accordingly, such official customs, policies and acts of these Defendants resulted in correctional officers at MOCC being inadequately supervised and trained with regard to the legal rights of the Plaintiff that were specifically violated and that directly and/or proximately caused the significant damages he suffered.

(First. Am. Compl. ¶¶ 37-39).

The claim must be assessed in light of the well-settled standards for Fourteenth Amendment failures to train and supervise, which appear, respectively, below:

> **FAILURE TO TRAIN**:
>
> [A] failure to train can constitute a "policy or custom" actionable under section 1983 only where the "municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants." And only if, "in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," can a municipality reasonably "be said to have been deliberately indifferent to that need." Mere negligence is insufficient to impose section 1983 liability on a municipality for alleged failure to train.

<u>Jordan v. Jackson</u>, 15 F.3d 333, 341 (4th Cir. 1994) (citations omitted).

**FAILURE TO SUPERVISE**:

In order to succeed on a § 1983 claim for supervisory liability, a plaintiff must show:

(1) that the supervisor had actual or constructive knowledge that h[er] subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;

(2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and

(3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

As to the first element, "[e]stablishing a 'pervasive' and 'unreasonable' risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." As to the second element, a plaintiff "may establish deliberate indifference by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." Finally, as to the third element, "proof of causation may be direct ... where the policy commands the injury of which the plaintiff complains ... or may be supplied by the tort principle that holds a person liable for the natural consequences of his actions.".

Wilkins v. Montgomery, 751 F.3d 214, 226-27 (4th Cir. 2014) (citations omitted). Mr. Rauch's allegations fall well short of the marks established in Jackson and Wilkins.

The designation defendants assert an additional pleading defect, namely, that the Fourteenth Amendment due process claims against them do not satisfy the rigors of Twombly

9

and Iqbal. Mr. Rauch narrows the claim in his responsive briefing, asserting that he has pled only the "failure to afford" him "due process in accessing administrative procedures." (Resp. at 12). He no longer appears to press, inter alia, an equal protection claim, nor does he pursue a due process claim for any purpose other than in accessing administrative procedures.

Nevertheless, the specific allegations supporting the narrowed due process claim are, like the Fourteenth Amendment failure to train and supervise claim, inadequately pled. For example, one must speculate respecting the nature of the "woefully inadequate and unreasonable responses to [Mr. Rauch's] . . . attempts to obtain relief by way of" the WVDOC and Mount Olive administrative procedures. (Resp. at 12 (quoting First. Am. Compl. ¶ 33).

The court, accordingly, ORDERS that Commissioner Rubenstein's and Warden Ballard's motion to dismiss be, and hereby is, granted conditionally respecting the Fourteenth Amendment failure to train and supervise claims and otherwise denied. The court further ORDERS that the designation defendants' motion to dismiss be, and hereby is, granted conditionally respecting the Fourteenth Amendment due process claim and otherwise denied.

Mr. Rauch is given leave, no later than August 15, 2014, to attempt to amend the operative pleading to allege further facts that would state plausible Fourteenth Amendment claims against the defendants named in the preceding paragraph. In the absence of such an amendment, the motions to dismiss will be formally granted.

The defendants' remaining contentions are not meritorious. First, Commissioner Rubenstein, Warden Ballard, the designation defendants, and the correctional officer defendants move to dismiss on the grounds that Mr. Rauch has alleged only official capacity claims against them and, as state officers, they do not qualify as "persons" subject to suit in that capacity.

The court notes that "a plaintiff need not plead expressly the capacity in which he is suing a defendant in order to state a cause of action under § 1983." Biggs v. Meadows, 66 F.3d 56, 60 (4th Cir. 1995). When capacity is not pled specifically, the court is obliged to "examine the nature of the plaintiff's claims, the relief sought, and the course of proceedings to determine whether a state official is being sued in a personal capacity." Id. at 61.

Having analyzed the operative pleading, the court concludes that Mr. Rauch has pled individual capacity claims. Foremost, the request for compensatory damages, and for punitive damages against the "individual defendants," suggests a judgment is sought against those defendants personally. Compare First. Am. Compl. at 8, with Suarez Corp. Industries v. McGraw, 125 F.3d 222, 229 (4th Cir. 1997) ("[W]e take SCI's request for compensatory and punitive damages as an indication that these state actors are being sued in their personal capacities here, since such relief is unavailable in official capacity suits.") (citing Biggs, 66 F.3d at 61).  There is no basis for dismissal on this ground.

Second, Commissioner Rubenstein, Warden Ballard, the designation defendants, and the correctional officer defendants assert that any claim by Mr. Rauch for damages arising out of the November 7, 2010, incident is barred by the applicable limitations period.  Mr. Rauch clarifies in his response briefing that he seeks no recompense for the incident, adding it only to provide context.

Third, this same group of defendants asserts that "the massive passage of time between the alleged incidents" eviscerates as a matter of law any attempted showing of causation.  (See, e.g., Desig. Defs.' Memo. of Law at 9).  The

12

assertion is dismissed inasmuch as the timeline, and its substantive content and impact, plainly warrants further development during discovery.

### III.

Based upon the foregoing discussion, it is ORDERED as follows:

1. That the WVDOC's motion to dismiss be, and hereby is, granted;

2. That Commissioner Rubenstein's and Warden Ballard's motion to dismiss be, and hereby is, granted conditionally respecting the Fourteenth Amendment failure to train and supervise claims and otherwise denied;

3. That designation defendants' motion to dismiss be, and hereby is, granted conditionally respecting the Fourteenth Amendment due process claim and otherwise denied;

4. That Mr. Rauch be, and hereby is, granted leave no later than August 15, 2014, to attempt to amend the operative pleading to allege further facts that would state plausible Fourteenth Amendment claims against

the defendants named in numbered paragraphs 2 and 3. In the absence of such an amendment, the motions to dismiss will be formally granted.

The Clerk is directed to transmit copies of this written opinion and order to all counsel of record and any unrepresented parties.

ENTER: July 25, 2014

John T. Copenhaver, Jr.
United States District Judge